NO. 24-10028-HH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
>*Plaintiff/appellee,*

v.

KERBY JOSEPH,
>*Defendant/appellant.*

On Appeal from the United States District Court
For the Southern District of Florida

BRIEF OF THE APPELLANT
KERBY JOSEPH

HECTOR A. DOPICO
  Interim Federal Public Defender
EBONI BLENMAN
  Assistant Federal Public Defender
  Attorneys for Appellant
  150 West Flagler Street, Suite 1700
  Miami, Florida 33130
  Telephone No. (305) 530-7000

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

### United States v. Kerby Joseph
### Case No. 24-10028-HH

Appellant, Kerby Joseph files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1:

Becerra, Hon. Jacqueline

Bell, Henry Philip

Blenman, Eboni

Cadet, Eric

Caruso, Michael

Damian, Hon. Melissa

Dobbins, Brian

Donet, Jr., David Antonio

Dopico, Hector A.

Fleischer, Bruce Harris

Gayles, Hon. Darrin P.

Goodman, Adam Keith

Goodman, Hon. Jonathan

Higgins, Celeste Siblesz

Hyman, Mitchell Evan

Joseph, Kerby

Lapointe, Markenzy

Lomax, Adebunmi

Louis, Lauren Fleischer

Matzkin, Daniel

Moss, Jr., Reginald Anthony

Otazo-Reyes, Hon. Alicia M.

Princilis, Jarlens Benoit

Reid, Hon. Lisette M.

Saint Ford, Jan

St Luc, Jovis

Sanchez, Hon. Eduardo I.

Smukler, Elena

Stone, Emily Rose

Taylor, Kathleen Elena Handlin

Torres, Hon. Edwin G.

Touissant, Wilmington

United States of America

Vernelus, Jerry

Woodard, Damian


/s/Eboni Blenman
Eboni Blenman
Assistant Federal Public Defender
150 W. Flagler St., Ste. No. 1700
Miami, FL 33130
eboni_blenman@fd.org

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Joseph respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision-making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................C-1

STATEMENT REGARDING ORAL ARGUMENT ..................................i

TABLE OF CITATIONS ...........................................................iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ...................................................................vii

STATEMENT OF THE ISSUES..............................................1

STATEMENT OF THE CASE ................................................2

    Course of Proceedings and Disposition in the District Court .........2

    Statement of Facts ..........................................................3

    Standards of Review.........................................................8

SUMMARY OF THE ARGUMENT ...........................................9

ARGUMENT AND CITATIONS OF AUTHORITY ..............................10

Mr. Joseph's sentence must be reversed because the district court improperly relied on guideline commentary in applying an "intended loss" enhancement despite the absence of "actual loss" ........10

   I.   Loss means loss. Under recent Eleventh Circuit case law, guideline commentary cannot trump unambiguous guideline text ........................................................................10

   II.  Even if "loss" was a genuinely ambiguous term, the commentary is not a reasonable interpretation of it.....................................17

CONCLUSION ................................................................21

CERTIFICATE OF COMPLIANCE.........................................................22

CERTIFICATE OF SERVICE...............................................................23

# TABLE OF CITATIONS

## <u>CASES:</u>

*Auer v. Robbins,*

    519 U.S. 452 (1997) ........................................................................... 11

*Bowles v. Seminole Rock & Sand Co.,*

    325 U.S. 410 (1945) ........................................................................... 11

*Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc.,*

    467 U.S. 837 (1984) ........................................................................... 12

*Kisor v. Wilkie,*

    588 U.S. 558 (2019) ................................................... 9,11-14, 17-20

*Stinson v. United States,*

    508 U.S. 36 (1993) ...................................................... 11, 13, 18-20

*United States v. Amadeo,*

    370 F.3d 1305 (11th Cir. 2004) ......................................................... 8

*United States v. Banks,*

    55 F.4th 246 (3d Cir. 2022) ......................................... 11, 14, 15, 16

*United States v. Dubois,*

    94 F.4th 1284 (11th Cir. 2024)........................................................... 8

*United States v. Dupree,*

    57 F.4th 1269 (11th Cir. 2023) .................................. 9, 10-15, 17, 20

*United States v. Kirilyuk,*

    29 F.4th 1128 (9th Cir. 2022) .................................................. 17, 19

*United States v. Patel,*

    No. 19-CR-80181-Ruiz, (S.D. Fla. Aug. 23, 2023) .......................... 15

*United States v. Riccardi,*

    989 F.3d 476 (6th Cir. 2021) ............................................. 14, 17-20

*United States v. Smith,*

    54 F.3d 690 (11th Cir. 1995) ........................................................ 13

*United States v. Weir,*

    51 F.3d 1031 (11th Cir. 1995) ...................................................... 13

*United States v. Wheeler,*

    No. 5:22-CR-38-FK-1, 2023 WL 4408939 (E.D.N.C. July 6, 2023) ...................................................................................... 17

## **STATUTES:**

18 U.S.C. § 3231 ..............................................................................viii

18 U.S.C. § 3742 ..............................................................................viii

28 U.S.C. § 1291 ..............................................................................viii

**OTHER AUTHORITIES:**

U.S.S.G. § 2B1.1 ............................................................... 4, 5, 9, 11, 14-20

U.S.S.G. § 2B1.1(b)(1)........................................................... 10, 15

U.S.S.G. § 2B1.1(b)(2)........................................................ 5, 16, 17

U.S.S.G. § 2B1.1(b)(2)(A)(i) ......................................................... 5

U.S.S.G. § 2B1.1(3)(A) ............................................................... 5

U.S.S.G. § 2B1.1(3)(F) ................................................................ 5

U.S.S.G. § 4B1.2 ...................................................................... 13

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because Mr. Joseph, who was the defendant below, was charged with an offense against the laws of the United States. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. The appeal was timely filed on January 2, 2024, (DE 217), from the final judgment entered on December 21, 2023, (DE 216), which disposed of all claims between the parties to this cause.

Mr. Joseph is serving a 42-month term of imprisonment, to be followed by three years of supervised release.

## STATEMENT OF THE ISSUE

Whether Mr. Joseph's sentence must be reversed because the district court improperly relied on guideline commentary in applying an "intended loss" enhancement despite the absence of "actual loss."

## STATEMENT OF THE CASE

## Course of Proceedings and Disposition in the District Court

This appeal concerns a principle of basic fairness: we punish individuals for what they do, and not for what they do not do. Or, as relevant here, pursuant to the plain, unambiguous text of the applicable sentencing guideline for economic offenses, we punish individuals for "loss" caused—that is actual loss. And when, as is the case here, there is no actual loss, we do not and cannot, look to guideline commentary and punish based on the fictional notion of "intended loss."

In January of 2023, Kerby Joseph was one of seven individuals charged in a 45-count indictment. (DE 3). Mr. Joseph faced nine counts: one count of conspiracy to commit access device fraud (Count 1); one count of possession of fifteen or more unauthorized access devices (Count 6); and seven counts of aggravated identity theft (Counts 7–13). (*Id.*).

He pled guilty to the indictment. (*See* DE 120). At sentencing, over defense objection, the district court applied an enhancement for intended loss. This appeal follows.

## Statement of Facts

In December of 2020, Mr. Joseph was arrested at his home and ultimately charged, in 21-20062-CR-Gayles, in a single count indictment with possessing a firearm and ammunition as a convicted felon. (DE 152 ¶ 67). At the time of his arrest, his phone was seized and, shortly thereafter, a search warrant for the same obtained. (DE 121). The contents of this phone serve as the basis for the instant matter. *See generally id.* (describing communications and content recovered during forensic examination of the phone). However, after the search, over two years passed before this case's Indictment was filed. *See* DE 3 (filed January 16, 2023).

By the time of his Initial Appearance and Arraignment on the "new" indictment, Mr. Joseph had resolved the earlier case, earned his GED while serving a federal sentence, DE 207 at 5, completed both an Anger Management program, *id.* at 6, as well as Substance Abuse Treatment, *id.*, successfully transitioned to a halfway house, DE 152 ¶ 89, and even secured a job at ShipMonk, a local fulfillment center, DE 207 at 1–2.

In its investigation spanning years, law enforcement found evidence of, and Mr. Joseph accepted responsibility for possessing the

personally identifiable information ("PII") of others as well as communicating with others about ways to obtain PII belonging to third parties. (*See* DE 121).

Importantly, through its years-long investigation, law enforcement determined as well that no individual victim or financial institution suffered any actual monetary loss. (*See* DE 152 ¶ 47). Stated more simply, there was <u>no</u> actual loss.

On September 11, 2023, Mr. Joseph appeared before the district court where he pled guilty to the charges against him—without any plea agreement. (*See* DE 120).

The United States Probation Office prepared a draft Presentence Investigation Report ("PSI"). (DE 152). As to the aggravated identity theft counts, the PSI noted the mandatory 24-month term of imprisonment. (*Id*. ¶ 121). The PSI further noted that while the sentences for the counts of aggravated identity theft could run concurrently to each other, any sentence imposed for that offense must run consecutively to any other counts of conviction. (*Id*. ¶¶ 121–122).

As to Counts 1 and 6, the PSI applied U.S.S.G. § 2B1.1 in assigning a base offense level of 6, *id*. ¶ 53, and consistent with the factual proffer

4

(DE 121), applied a 2-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i), for an offense involving 10 or more victims. (DE 152 ¶ 55).

From there, things went askew. While noting that "none of the victims incurred any actual monetary loss," *id.* ¶ 47, and also that "no financial institutions sustained an actual loss" as a result of the offense conduct, *id.*, the PSI nonetheless applied a 10-level increase to the base offense level, predicated on an "intended loss amount" of at least $170,000. *Id.* ¶¶ 42, 54. The PSI reached this sum based on guideline commentary, more specifically § 2B1.1 notes 3(A) and 3(F), providing that intended loss be calculated by multiplying the number of unauthorized access devices possessed (the PSI stated there were 340 devices, ¶ 42) by $500.

Applying the intended loss amount calculated under the commentary, the PSI calculated a total offense level of 15. *Id.* ¶ 63. With a criminal history category of III, *id.* ¶ 68, this resulted in a guideline range of 24–30 months. (*Id.* ¶ 123). Had Mr. Joseph's guidelines been calculated on the basis of actual loss ($0), the total offense level would have been 6 with a resultant guideline range of 2–8 months. Thus, the

5

application of intended loss resulted in a guideline range 275% greater at the high end and over 1000% greater at the low end.

Mr. Joseph filed Objections to the Draft Presentence Investigation Report challenging the loss amount asserted as well as the resultant guideline calculation. (DE 169).

On December 20, 2023, the district court conducted a sentencing hearing. Mr. Joseph again objected to the loss amount calculation, the assertion that he possessed 340 unauthorized access devices, and the application of the $500-per-device formula set forward in the Guideline commentary. (DE 233 at 4–8). Given the need for evidence to be presented as to the number of access devices possessed, the district court adjourned the hearing. (*Id*. at 16–17).

The hearing resumed the following day, at which time Mr. Joseph withdrew his objection to the number of access devices but maintained his objection to the application of intended loss based on guidelines commentary, including the prescribed $500 per device formula. (*Id*. at 2–3).

Ultimately, the Court overruled his objection, disregarded the absence of any actual loss and adopted the intended loss guideline

6

calculation (resulting in the guideline range of 24–30 months) separate and apart from the mandatory consecutive sentence of 24 months' imprisonment for the aggravated identity theft convictions. (*Id.* at 3).

Mr. Joseph was sentenced to a total term of 42 months' imprisonment: 18 months as to each of counts 1 and 6, to run concurrently with each other, followed by the consecutive term of 24 months as to the aggravated identity theft counts, to run concurrently with each other. (DE 216). Notably the 18-month term was over double the top of the actual loss guideline range.

Following the sentence's announcement, Mr. Joseph renewed his objection regarding loss amount. (DE 244 at 16:2–3).

## Standards of Review

The interpretation and application of the federal sentencing guidelines is reviewed *de novo*. *United States v. Amadeo*, 370 F.3d 1305, 1312 (11th Cir. 2004); *United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024).

## SUMMARY OF THE ARGUMENT

Following a years-long investigation, the government determined there was no actual loss in this case. The district court nevertheless assessed a 10-level increase based on an *intended* loss of $170,000. Here, the text of the applicable guideline provision, USSG § 2B1.1, itself is clear and makes no allowance for an enhancement based on "intended" loss. Therefore, under the Eleventh Circuit's recent *en banc* decision in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023), reliance on any guideline commentary to the contrary is improper.

Moreover, even if the term "loss" was ambiguous, the commentary—assigning a rigid and arbitrary calculation—does not provide a reasonable interpretation of the term and therefore fails under *Kisor v. Wilkie*, 588 U.S. 558 (2019).

## ARGUMENT AND CITATIONS OF AUTHORITY

**Mr. Joseph's sentence must be reversed because the district court improperly relied on guideline commentary in applying an "intended loss" enhancement despite the absence of "actual loss."**

I.   **Loss means loss. Under recent Eleventh Circuit case law, guideline commentary cannot trump unambiguous guideline text.**

Section 2B1.1(b)(1) of the sentencing guidelines provides for incremental enhancements of an accused's offense level corresponding to the amount of "loss" incurred. The guideline states:

> (1)    If the loss exceeded $6,500, increase the offense level as follows:
>
> **Loss (apply the greatest)**
> \*                \*                \*
> (E)   More than $95,000 . . . . . . . . . . . . . . . . . .add 8
> (F)   More than $150,000 . . . . . . . . . . . . . . . .. add 10
> (G)   More than $250,000 . . . . . . . . . . . . . . . .. add 12
> (H)   More than $550,000 . . . . . . . . . . . . . . . . .add 14
> (I)   More than $1,500,000 . . . . . . . . . . . . . . add 16

Notably, the guideline itself makes no mention of "intended loss." Only in the commentary to the guideline is a sentencing court invited to utilize the "greater of the actual loss or intended loss," *id.* at Note 3(a), although the latter term is found nowhere in the text. Under *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023), this Court should not

10

defer to the commentary because "the term 'loss' is unambiguous in the context of § 2B1.1 and because the loss enhancement commentary improperly expands the Guideline[.]"    *United States v. Banks*, 55 F.4th 246, 253 (3d Cir. 2022).

*Dupree* changed the law in this Circuit with respect to the operation of the guidelines as interpreted by the guideline commentary. 57 F.4th 1269 at 1274. Specifically, *Dupree* recognized that the Supreme Court had limited the deference given to the guideline commentary through analogous cases in the field of administrative law, equating the guideline commentary to administrative agencies' interpretations of their own regulations. *Id*. Such comparison had carried through the Supreme Court cases of *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *Auer v. Robbins*, 519 U.S. 452 (1997); and *Stinson v. United States*, 508 U.S. 36 (1993).    Under these cases, however, the deference doctrine had become "a caricature" of proper deference, as deference to agency interpretations/guideline commentary had become "reflexive." *Dupree*, 57 F.4th at 1275 (citing *Kisor v. Wilkie,* 588 U.S. 558, 574 (2019)).

The Supreme Court changed this practice of reflexive deference in *Kisor*, which made clear that deference to agency interpretations of

11

regulations should not be granted unless the regulation at issue was genuinely ambiguous. To make that determination, "a court must exhaust all the 'traditional tools' of construction." *Kisor*, 558 U.S. at 575 (citing *Chevron U.S.A. Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)). "[A] court must 'carefully consider[]' the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Kisor*, 558 U.S. at 559 (internal citation omitted). If after employing these tools, "uncertainty d[id] not exist, there [wa]s no plausible reason for deference. The regulation then just mean[t] what it mean[t] – and the court must give it effect, as the court would any law." *Id*. at 574–75.

If the court found a regulation to be genuinely ambiguous, the court had to employ additional tests to determine if deference was appropriate under those circumstances. The *Kisor* court found that this was a broad-searching inquiry, and thus it gave "markers" as guidance. 558 U.S. at 576–577. *Kisor* stated that if the regulation was ambiguous, the agency's interpretation still had to be "reasonable," given the character and the context of the regulation. 588 U.S. at 575–76. This meant it had to "come within the zone of ambiguity the court ha[d] identified after

12

employing all its interpretive tools." *Id*. at 576. Further, even if an agency's interpretation could be classified as "reasonable," there were still other considerations before deference could be given. *Id*. The interpretation had to "be the agency's 'authoritative' or 'official position,'" it had to "in some way implicate [the agency's] substantive expertise," and it had to "reflect [the] fair and considered judgment" of the agency. *Id*. at 577.   If all these tests were met, then deference was appropriate.

This Court in *Dupree* determined that the limitations set out in *Kisor* applied to *Stinson* and the federal sentencing guidelines. 57 F.4th at 1275. This resulted in *Dupree*'s abrogating prior Eleventh Circuit authority *United States v. Weir*, 51 F.3d 1031 (11th Cir. 1995), and *United States v. Smith*, 54 F.3d 690 (11th Cir. 1995), which had previously given the reflexive-type of deference to U.S.S.G. § 4B1.2's commentary.   57 F.4th at 1279 n.9.   That commentary purported to define a "controlled substance offense" to include inchoate offenses, although the text of § 4B1.2 did not itself include inchoate offenses.

*Dupree's* holding applying *Kisor* to *Stinson* and the federal sentencing guidelines is not limited to U.S.S.G. § 4B1.2.   Rather, *Dupree* also substantially impacts Mr. Joseph's case under U.S.S.G. §

2B1.1. *Dupree* makes clear that there was error in Mr. Joseph's case because the intended loss and $500 Special Rule set out in §2B1.1, notes 3(A) and 3(F) should never have been utilized as part of Mr. Joseph's guideline calculation. *See Dupree*, 57 F.4th at 1279 & n.9; *see also United States v. Banks*, 55 F.4th 246, 257-58 (3d Cir. 2022) (applying *Kisor* to § 2B1.1 note (3)(A), the court found, "The Guideline does not mention 'actual' versus 'intended' loss; that distinction appears only in the commentary. . . . The ordinary meaning of loss in the context of § 2B1.1 [an enhancement for basic economic offenses] is 'actual loss.' This result is confirmed by dictionary definitions of 'loss.'"); *United States v. Riccardi*, 989 F.3d 476, 486 (6th Cir. 2021) (applying *Kisor* to § 2B1.1 note (3)(F) where gift cards averaging $35 each were deemed to cause a $500 loss each, the court found, "Commentary may only interpret the guideline. And a $500 mandatory minimum cannot be described as an interpretation of the word 'loss.' Rather, it is a substantive legislative rule that belongs in the guideline itself to have force.").

Similar to *Dupree*, Mr. Joseph's case involves an unambiguous guideline, U.S.S.G. § 2B1.1. The text of § 2B1.1 simply instructs the court to calculate monetary loss and then select the corresponding

14

enhancement level on a loss table that consists of graduated penalties based on increasing loss amounts.   The text of § 2B1.1 does not hint at the expansive concept of "intended loss" or a rule that deems loss for access devices to be $500 per device, regardless of the actual loss.   Notes 3(A) and 3(F), therefore, are illegal expansions of the § 2B1.1 guideline, and thus under *Dupree*, they could not be utilized to calculate loss under §2B1.1.

District courts within this district have recognized the sea change brought about by *Dupree*.   In *United States v. Patel*, No. 19-CR-80181-Ruiz, (S.D. Fla. Aug. 23, 2023), Judge Ruiz grappled with this issue. Unsurprisingly, Judge Ruiz first considered *Dupree's* impact on his analysis, recognizing that, "if a guideline is unambiguous, 'there is no plausible reason for deference' to the commentary, and the court must apply the guideline's unambiguous meaning."   *Id.* at 2 (quoting *Dupree*, 57 F.4th at 1275).   Then, citing *Banks*, Judge Ruiz found that "'loss only has one possible meaning: actual loss," *id*. at 4, thereby rejecting the government's   suggestion that "loss," as used in § 2B1.1(b)(1), is ambiguous. Notably, Judge Ruiz eschewed any consideration of the guideline's context or purpose as he found that he was "bound by § 2B1.1's

15

plain text[.]" *Id*. at 5.[1]

In *Banks*, the Third Circuit addressed a similar challenge to a loss enhancement. The court reasoned that "[t]he Guideline does not mention 'actual' versus 'intended' loss; that distinction appears only in the commentary.   That absence alone indicates that the Guideline does not include intended loss."  *Id*. at 257.   It then considered the dictionary definition of "loss," concluding that the "ordinary meaning of 'loss' in the context of § 2B1.1 is 'actual loss.'"   *Id*.   The court ultimately concluded that "in the context of a sentence enhancement for basic economic offenses, the ordinary meaning of the word 'loss' is the loss that the victim actually suffered."   *Id*. at 258.   Its holding "accord[ed] the commentary no weight."   *Id*.

In sum, "loss" in the context of § 2B1.1(b)(2) unambiguously means actual – not intended – loss.   Resorting to the commentary is therefore

---

[1] In his ruling, Judge Ruiz recognized that this Court has affirmed sentences in which the district court relied, in part, on intended loss. However, he rightfully noted that in those cases, no objection had been lodged in the district court and this Court was reviewing only for plain error. Judge Ruiz concluded that since the appellate court simply found the error not to be plain, those cases do not control; they are neither binding nor persuasive here.

not only unnecessary but, after *Dupree*, prohibited.    Since no person or entity here incurred any actual loss, no § 2B1.1(b)(2) enhancement was warranted.[2]

## II.    Even if "loss" was a genuinely ambiguous term, the commentary is not a reasonable interpretation of it.

The district court relied on the "special rule" found in Application Note 3(F)(i) to § 2B1.1 to calculate the intended loss. That note "creates a rigid, fictional $500 minimum loss amount per credit card – no matter the facts of the particular case."    *United States v. Kirilyuk*, 29 F.4th 1128, 1137 (9th Cir. 2022).    Nosupport for that provision is found in the guideline itself.

In *United States v. Riccardi*, the Sixth Circuit, after recognizing the more limited deference afforded to the commentary after *Kisor*, addressed whether "loss," as used in § 2B1.1, is ambiguous. 989 F.3d 476 (6th Cir. 2021).    Although the court noted that "'loss' can mean different

---

[2] *See also United States v. Wheeler*, No. 5:22-CR-38-FK-1, 2023 WL 4408939 (E.D.N.C. July 6, 2023) ("Simply put, the term 'loss' has a plain dictionary meaning that does not include 'intended loss' and the guideline itself does not say anything about 'intended loss'.    Therefore, 'loss' under § 2B1.1 must be limited to 'actual loss', comprising 'the loss the victim actually suffered.'" *Id.* at 2 (citation and internal quotation marks omitted)).

17

thing in different contexts," *id.* at 486, it declined to decide "whether one clear meaning of the word 'loss' emerges from the potential options after applying the traditional tools of construction." *Id.* (internal quotation marks omitted). Instead, it concluded that, "no matter the word's meaning, the commentary's $500 minimum loss amount for gift cards does not fall within the zone of [any] ambiguity in this guideline." *Id.* (alteration in original)(internal quotation marks omitted). Further, because Note 3(F)(i) expands rather than interprets § 2B1.1's text, the court found that it addresses a "substantive policy decision" that belongs more appropriately in the guideline than in the commentary. Riccardi's sentence was therefore vacated.

A concurring judge in *Riccardi* reached the same conclusion using a somewhat different analysis. That judge applied the more deferential standard in *Stinson v. United States,* 508 U.S. 36 (1993), rather than *Kisor*.[3] But like the majority, the concurrence recognized that the

_____

[3] In *Stinson*, the Supreme Court directed that, "Commentary is authoritative as long as the interpretation does not violate the Constitution or a federal statute and is not plainly erroneous or inconsistent with the provision's text." *Riccardi*, 989 F.3d at 491 (Nalbandian, J. concurring) (citation and internal quotation marks

commentary can only "interpret the guidelines, not contradict or add to them." *Id.* at 493 (Nalbandian, J., concurring).   It ultimately concluded that Note 3(F)(i) exceeds those limitations.[4]

The Ninth Circuit in *Kirilyuk*, *supra*, similarly relied on *Stinson* rather than *Kisor* in vacating the defendant's sentence.[5]   The court there reasoned that:

> Though dictionary definitions for 'loss' may vary, they make one thing clear: No reasonable person would define the 'loss' from a stolen [credit] card as an automatic $500 rather than a fact-specific amount.   Instead, § 2B1.1 is driven by the amount of loss *caused by the crime*.   So 'loss' cannot mean a predetermined, contrived amount with no connection to the crime committed, even if it is based on the Commission's research and data. Application Note 3(F)(i) thus doesn't illuminate the meaning of 'loss', but modifies it. *Id.*, 29 F.4th at 1138 (emphasis in original)(citations and internal quotation marks omitted).

Noting the "egregious problem" resulting from the application of Note 3(F)(i) to Kirilyuk's sentencing, the Ninth Circuit joined the Sixth

_____

omitted).

[4] The concurrence referred to the commentary as "a policy call disguised as an interpretation." *Id.* at 493 (Nalbandian, J. concurring).

[5] The court explicitly stated that it was not "express[ing] a view" concerning the *Kisor* analysis, noting only that its "reasoning tracks with [the] *Riccardi* concurrence. *Kirilyuk*, 29 F.4th at 1139.

Circuit's observation that the provision did not "explain the Guidelines" but rather "enact[ed] policy changes to them." *Id.*

While the outcome is the same whether under *Kisor* or *Stinson*, *Dupree* mandates the application of *Kisor*. Accordingly, as the "bright – line [$500 minimum amount rule] cannot be considered a reasonable interpretation of – as opposed to an improper extension beyond - § 2B1.1's text", *Riccardi*, 989 F. 3d at 480, the district court's reliance on Note 3(F)(i) to support the challenged 10-level enhancement warrants reversal for re-sentencing.

# CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment and remand for resentencing.

HECTOR A. DOPICO
INTERIM FEDERAL PUBLIC DEFENDER

*/s/ Eboni Blenman*
Eboni Blenman
Assistant Federal Public Defender
150 West Flagler Street, Suite 1700
Miami, Florida 33130
Telephone No. (305) 530-7000

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation and typeface requirements of Fed. R. App. P. 32(a)(7)(B), because it contains 3,535 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Century Schoolbook font.

*/s/ Eboni Blenman*
Eboni Blenman

**CERTIFICATE OF SERVICE**

I HEREBY certify that on this date, July 11, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent four copies to the Clerk of the Court via third party commercial carrier for delivery within three days. I also certify that the foregoing document is being served this day via CM/ECF on Daniel Matzkin, Chief Appellate Division, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*/s/ Eboni Blenman*
Eboni Blenman